(No. 26798.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CRUM HANNON, Plaintiff in Error.

*Opinion filed November 18, 1942.*

D. B. Reid, for plaintiff in error.

George F. Barrett, Attorney General, and M. J. O'Shea, State's Attorney, (Peyton Berbling, of counsel,) for the People.

Mr. Justice Thompson delivered the opinion of the court:

A writ of error was sued out to review a judgment of the circuit court of Alexander county sentencing the defendant, Crum Hannon, on the verdict of a jury finding him guilty of assault with intent to murder one LeRoy Chamness. The indictment was returned at the October term, 1940, charging the commission of the offense on August 26, 1939, by shooting with a pistol.

At the October term, 1941, the defendant was furnished with a copy of the indictment and a list of witnesses and jurors. On October 15, 1941, the People filed a motion for a continuance on the ground of absence of material witnesses. The defendant was arraigned, entered a plea of not guilty and demanded trial. The case was continued on the People's motion. At the February term, 1942, which convened February 16, the case went to trial, after the court overruled defendant's motion for his discharge on the ground that the State had failed to give him a trial within four months after demand. The same question was raised in the motion in arrest of judgment, and the trial court's refusal to discharge him is assigned as error.

Under the provisions of section 18 of division XIII of the Criminal Code (Ill. Rev. Stat. 1941, chap. 38, par. 748) it was the court's duty to grant him a trial within four months of such demand, (*People* v. *Fox,* 269 Ill. 300,) subject to the provision that, if the court was satisfied that due exertion had been made to procure the evidence on behalf of the People and that if there is reasonable ground to believe such evidence may be procured at a later date, the cause may be continued for not more than 60 days.

Plaintiff in error contends that the four-months' period from the time the demand for trial was made, on October 15, 1941, expired on February 15, 1942, and that since the trial was not begun until February 16, 1942, one day after such expiration, he was entitled, as a matter of right, to his discharge. Since February 15, 1942, fell on Sunday, the time must be reckoned from the following day, under the statute which provides that "the time within which any Act provided by law is to be done shall be computed by excluding the first day and including the last, unless the last day is Sunday or is a holiday * * * and then it also shall be excluded." (Ill. Rev. Stat. 1941, chap. 131, par. 1, eleventh.) The statement made by counsel for the defendant that the first demand for trial was made on July 17 is without foundation in the record. The alleged crime was committed in 1939 but defendant's right to a trial within four months accrued at the time of the first demand. The 1941 amendment was in force at that time and controlled. (Ill. Rev. Stat. 1941, chap. 131, par. 4; *Farmer* v. *People,* 77 Ill. 322.) It is therefore unnecessary to discuss the contention made by the prosecution that plaintiff in error waived the point by not including it in his motion for a new trial. The court properly refused to discharge him.

It is contended that the court erred in permitting the, State's Attorney to cross-examine character witnesses produced by the defendant to support the presumption of innocence by showing his good reputation. Two witnesses were called, who testified that they were acquainted with defendant's reputation as a peaceful, law-abiding citizen prior to August 1939, and that such reputation was good. On cross-examination the State's Attorney was permitted, over objections, to ask the witness Otto Serbiam: "Did you know that he was arrested on March 28, 1938, and charged with being disorderly and that he paid a fine of ten dollars

in the Police court? Did you know that in June, 1938, he was arrested? Did you know that on September 27, 1938, he was arrested and fined fifteen dollars for disorderly conduct? Did he run a gambling house about a block from your store?" The witness Charles A. Bolar was asked: "You didn't know anything about him being arrested and paying fines for disorderly conduct? You don't know anything about him being arrested? Did you know he had a place out on Fifteenth street? Did you know anything about his gambling place out there?" The trial judge overruled the objections with the statement: "I think it is proper to test the witness' knowledge."

The decisions of this court are in substantial harmony that such cross-examination of character witnesses should not be permitted. (*McCarty* v. *People,* 51 Ill. 231; *Gifford* v. *People,* 87 id. 210; *Aiken* v. *People,* 183 id. 215; *Jennings* v. *People,* 189 id. 320; *People* v. *Beil,* 322 id. 434; *People* v. *Celmars,* 332 id. 113; *People* v. *Willy,* 301 id. 307; *People* v. *Anderson,* 337 id. 310; *People* v. *Page,* 365 id. 524.) It is true this current of authorities has not been without some dissent, and from the authors of American Law Reports, (71 A. L. R. 1498, annotations, p. 1504, *et seq.*) it appears that the rule adhered to in this State is not consistent with the great weight of authority in this country and in England. However such outside authority as to cross-examination is based on questions asked which are confined in the main to rumors and reports. Here the questions were not asked as to rumors and reports but assumed that defendant was guilty.

The rule followed in many jurisdictions is that a witness testifying to the good reputation or character of a defendant in a criminal prosecution may be interrogated on cross-examination with respect to *rumors* or *reports* of particular acts imputed to the defendant and as to what the witness has heard of specific charges of misconduct made

against the defendant. That rule is based on the proposition that when a defendant, (as he only can,) tenders his supposed good character in evidence to influence the scale in his favor, he thereby invites scrutiny and disclosure of specific, generic instances of his misconduct to depreciate the weight of the testimony of his character witnesses although the answers elicited may incidentally impute to him other guilt. *State* v. *Schull,* 131 Ore. 224, 282 Pac. 237, 71 A. L. R. 1498.

It will be observed that in the jurisdictions permitting such cross-examination of character witnesses they can only be asked as to rumors or reports of specific, *generic* acts imputed to the defendant and not as to the knowledge of the witness of specific acts of defendant of misconduct of a different generic character. This court in the recent case of *People* v. *Page, supra,* held that the prosecution should not be permitted to ask a character witness on cross-examination in a criminal case if he had ever heard of defendant being arrested, and that such error is reversible although the witness answers "no," as the witnesses did in the instant case. In that case this court said: "The questions asked on cross-examination had no justification. Their tendency was to prejudice the jury against the defendant. * * * Where such aspersions appear in the record the question is not what a court of review may think of the defendant's guilt or innocence but what the jury would have done if the case had been submitted to them without those aspersions." To the same effect see *People* v. *Celmars, supra.*

In *People* v. *Willy, supra,* on page 318, we said: "It is error to permit a character witness to be cross-examined as to his own knowledge of particular acts of bad conduct by the accused." It is particularly objectionable to ask concerning irrelevant acts of misconduct. (*People* v. *Celmars, supra.*) Questions asked on cross-examination of character witnesses, of the same character as those involved

in the instant case, were condemned in *People* v. *Anderson, supra,* on page 331. Where the matters about which the inquiries are made have no connection with or relation to the offense charged it is reversible error to ask such questions, even though objections thereto are sustained. (*People* v. *Beil, supra.*) Thus, in a prosecution for murder by abortion, a character witness cannot be asked if he had not heard people say that defendant was a gambler or gambled, (*Aiken* v. *People, supra,*) or that he had been mixed up in burning property in the neighborhood. The two discordant notes disturbing the harmony of our decisions are found in *Jennings* v. *People, supra,* page 325, where it is said that it was error to permit such questions to be asked but where the witnesses answered that they had never heard anything about such charges of alleged wrongdoing the result of the answers was favorable rather than prejudicial; and in *People* v. *Willy, supra,* wherein it is said, on page 319 of the opinion, "but a witness to good character may be asked on cross-examination, if he has heard rumors or conversation of particular charges of the commission of acts inconsistent with the character which he is called upon to prove."

In the instant case the testimony is in sharp conflict as to whether the defendant fired the shot in self-defense or in such a reckless disregard of human life as to impute to him an intent to murder the prosecuting witness. The error in permitting the improper cross-examination cannot be said to be harmless. The aspersions cast upon him by the questions asked and objected to were calculated to prejudice the jury against him as a violator of the law. The questions assumed that he had been arrested more than once and fined in police court for disorderly conduct and that he operated a gambling house. The witnesses were not asked as to rumors and reports that he was an operator of a gambling house and had been arrested and fined for disorderly conduct, but were interrogated as to their knowl-

edge of such assumed facts. and of specific acts which were not of a generic nature. They were in no way connected with nor related to the commission of the crime of assault with intent to murder.

The testimony of the defendant was corroborated by a number of witnesses to the effect that at the time he did the shooting he was acting in self-defense. It was a Saturday afternoon. Defendant was a plasterer and he was off duty for the rest of the day. He had cashed his pay check, redeemed a pawned pistol and went down to Peabody's place at Thirteenth and Poplar streets in Cairo. He was fifty-three years old and did not drink. When he reached Peabody's place, Homer Powell and two associates, Jesse James Cochran, known as "Chalk," and Felix Hines were there. Defendant and Homer Powell had an altercation over fifteen cents and Powell attempted to attack defendant with a knife, but was prevented by someone in the place. Powell and his two companions left and went up Poplar street. When defendant started up Poplar street. he saw Powell and the two men with him, and defendant went around a block or two coming back on Poplar street at Sixteenth street. There Powell, Hines and "Chalk" encountered defendant, and while two of them held. defendant's arms Powell kicked him in the stomach and threatened to kill defendant. Defendant and some of his witnesses claimed that Powell was coming at him when defendant fired three shots, the second bullet ricochetted and struck LeRoy Chamness, a boy, who was playing on the sidewalk down the street. Defendant had never known the Chamness boy and did not know for several days afterwards that he had been shot. Defendant was also indicted for assault with intent to murder Homer Powell, but from an affidavit in the record it appears that a jury disagreed as to his guilt.

From the sharp conflict in the testimony it cannot be said that the evidence was such that the jury could have

reached no other conclusion than that of defendant's guilt if the erroneous testimony of the character witnesses had not been admitted. The error is presumed to have affected the result. *People* v. *Jacobs,* 243 Ill. 580.

A person may deliberately use a deadly weapon in self-defense. The use of a pistol under such circumstances raises no implication of malice. (*Hammond* v. *People,* 199 Ill. 173.) In prosecutions for assault with intent to murder, the specific intent charged in the indictment must be proved beyond a reasonable doubt to warrant a verdict of guilty. *People* v. *Bollnow,* 331 Ill. 434, and cases therein cited.

In *Vandermark* v. *People,* 47 Ill. 122, the facts were much the same as in the instant case. The rule there announced may be deduced, in substance, to be that if a person who is in an altercation with another fires his pistol in reckless and total disregard of human life and the bullet strikes a third person, who is not even in the crowd, his conduct implies malice. Where he evidently intended to shoot someone without any apparent provocation it must be referred to a malicious intent. But if the person firing the shot appears to have been assaulted with a deadly weapon so that he might well suppose his life to be in danger, and that it could only be preserved by the use of his pistol, a verdict of guilty is not supported by the proof. The defendant is entitled to have the facts passed upon by another jury because of the erroneous admission of evidence as heretofore stated. It is unnecessary to consider the instructions which are alleged to have been erroneously given and refused, as the objections raised can easily be obviated in another trial.

The judgment of the circuit court is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*