Euripedes QUILES, Appellant,

v.

UNITED STATES of America, Appellee.

No. 19393.

United States Court of Appeals Ninth Circuit.

May 1, 1965.

Rehearing Denied June 21, 1965.

Barton C. Sheela, Jr., San Diego, Cal., for appellant.

Manuel L. Real, U. S. Atty., John K. Van de Kamp, Asst. U. S. Atty., Chief, Crim. Sec., J. Brin Schulman, Asst. U. S. Atty., Asst. Chief, Crim. Sec., David R. Nissen, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before CHAMBERS, JERTBERG and ELY, Circuit Judges.

JERTBERG, Circuit Judge.

Following trial to a jury, appellant was convicted on both counts of a two count

indictment charging violations of Title 21 U.S.C. § 176a.[1] Count one charges that beginning at a date unknown to the Grand Jury and continuing to on or about November 24, 1963, appellant and unindicted co-conspirators Candido Rodriguez and Jose Cordoba conspired together to import marihuana into the United States unlawfully. Count two charges that on or about November 24, 1963, Candido Rodriguez knowingly and unlawfully smuggled 180 pounds of marihuana into the United States and that appellant knowingly aided, abetted, and procured the commission of said offense.

The evidence introduced on behalf of the Government, in principal part, consists of the testimony of the unindicted co-conspirators Rodriguez and Cordoba. Their testimony may be summarized as follows:

Both had been sent to Mexico by appellant in an automobile provided by him to pick up a quantity of marihuana in Culiacan, Mexico and were instructed to deliver it to appellant in Los Angeles, California. They picked up the marihuana for which no payment was necessary from a woman at an address in Mexico given Cordoba by appellant. En route back to the United States, the car was damaged and was taken to a repair shop in Guaymas, Mexico. They telephoned appellant and notified him about the condition of the automobile whereupon he and one Guadalupe Evans, the owner of the car, drove to Guaymas. After some discussion about the marihuana and the expense of repairing the car, appellant and Evans returned to Los Angeles. A few days later, following repair of the car, Rodriguez and Cordoba resumed their journey but were stopped at the Point of Entry in San Ysidro, California. The marihuana which had been hidden under the seats of the car was discovered and they were placed under arrest.

Appellant's testimony, in substance, was: that he had previously been in the business of importing fruit into the United States from Mexico and was about to open a fruit business in San Francisco; that he had arranged with Cordoba to enter into a contract with Cordoba's uncle who was living in Mexico for the supplying of fruit; that he had allowed Cordoba and Rodriguez to take the car for the purpose of seeing Cordoba's uncle in connection with that agreement; and that he had gone to Guaymas, Mexico upon learning of the damage to the car to see what could be done about paying for the repairs.

Appellant first specifies that it was error to read to the jury the statutory presumption contained in 21 U.S.C. § 176a, supra, authorizing conviction when the defendant is shown to have or have had possession of the drug unless the defendant explains his possession to the satisfaction of the jury. It is argued that since appellant has never been shown to have been in the company of those in possession of the drug, and since those in possession had not testified that such possession was in effect the constructive possession of appellant, it was improper for the trial court to instruct the jury with regard to the statutory presumption.

[1]. "§ 176a. Smuggling of marihuana; penalties; evidence; definition of marihuana

"Notwithstanding any other provision of law, whoever, knowingly, with intent to defraud the United States, imports or brings into the United States marihuana contrary to law, or smuggles or clandestinely introduces into the United States marihuana which should have been invoiced, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such marihuana after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or whoever conspires to do any of the foregoing acts, shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000.

⁎    ⁎    ⁎    ⁎    ⁎

"Whenever on trial for a violation of this subsection, the defendant is shown to have or to have had the marihuana in his possession, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains his possession to the satisfaction of the jury.

⁎    ⁎    ⁎    ⁎    ⁎"

Constructive possession, defined as dominion over or control of the marihuana, is embraced within the meaning of the term "possession" as used in the statutory presumption of 21 U.S.C. § 176a, supra. Anthony v. United States, 331 F.2d 687 (9th Cir. 1964); Accord, Arellanes v. United States, 302 F.2d 603 (9th Cir. 1962).

The testimony of Rodriguez and Cordoba that they had been sent by appellant to pick up the marihuana (which they did) from a person to whom no payment was required and that they were acting at his direction was evidence from which it could honestly, fairly and conscientiously be inferred that appellant exercised dominion over and control of the marihuana sufficient to raise the statutory presumption against him. The fact that appellant was not shown to have been in the physical presence of those in actual possession does not obviate that inference or make the instruction to the jury concerning the statutory presumption not applicable to the facts in the instant case.

Appellant's contention that before the jury could properly have been instructed on the statutory presumption the co-conspirators must first testify that their possession was the constructive possession of appellant is without merit. Such testimony would be a mere conclusion as to a fact in issue on the part of the witness. This conclusion is for the jury to reach from the testimony offered at the trial. See, Eason v. United States, 281 F.2d 818, 820 (9th Cir. 1960).

It is next argued that the trial court, in its instructions, erred in its comments on the evidence in that the court adverted to inconsistencies in appellant's testimony but did not likewise point out the inconsistencies in the testimony of Rodriguez and Cordoba, the unindicted co-conspirators.

We have reviewed the record and find nothing in the comments upon the evidence made by the District Judge which results in unfairness to the appellant. The trial judge carefully separated his comments from his instructions of law. He made it clear to the members of the jury that they could disregard his comments entirely and that they were the sole judges of the facts. Furthermore, we note from our review of the record that no objection was raised below to the comments now objected to. See, United States v. Michelson, 165 F.2d 732, 735 (2d Cir. 1948), affirmed, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948).

Appellant next specifies as error that "the prosecutor was guilty of misconduct which was prejudicial to the rights of appellant in his examination of witnesses." The assignment embraces two points. The first arises from appellant's contention that "the prosecutor asked questions of the defendant apparently based on information from a confidential informant." The relevant facts in this regard are these: A San Francisco police inspector testified early in the trial that appellant had come to his office and requested that he turn over to appellant an Oldsmobile sedan which had been impounded by the police. On direct examination appellant was asked: "What happened to the Oldsmobile?" Appellant testified that he had gone to his partner's beer joint to speak with him about a semi-truck; that he had had an argument with someone about a $400 check; and that there was an altercation after which the vehicle was impounded by the police. On cross-examination by the Government, appellant was asked if he had gone there to collect some money for narcotics which he had supplied and if he was refused payment. An objection was made on the grounds that the questions were hearsay and improper cross-examination. A discussion among court and counsel ensued out of the hearing of the jury and the prosecuting attorney produced for the court's inspection the confidential reports of an informer which formed the basis for the questions. Appellant's motion for a mistrial was then denied and the jury was instructed that the questions relating to narcotics were stricken from the record and that they were to disregard such questions.

■ Appellant argues that the prosecuting attorney was guilty of misconduct in raising an innuendo that the Government knew more about appellant than it would prove.

A full cross-examination of a witness upon the subjects of his examination in chief is the absolute right of the party against whom he is called. Dixon v. United States, 333 F.2d 348 (5th Cir. 1964). There was no misconduct in the prosecutor's questions on a topic previously opened on direct examination particularly where, as here, the questions were founded in honest reliance upon information in possession of the prosecuting attorney. Cf. United States v. Haskell, 327 F.2d 281, 284 (2d Cir. 1964).

The second point alleging misconduct stems from the Government's redirect examination of Cordoba. On cross-examination of Cordoba by appellant's counsel, he was asked:

"Q When you were first arrested and you first talked to Mr. Maxcy, this agent, you told him you had no knowledge of the marihuana that was found in the car; is that correct?"

To this question Cordoba stated: "Yes, sir."

The Mr. Maxcy referred to, was an agent of the Bureau of Customs, United States Treasury Department, who apprehended appellant at the border. On redirect examination the prosecutor asked Cordoba:

"Q Now, sir, have you been reluctant to testify against Mr. Quiles because you are afraid of him?"

Appellant's counsel objected to the question "as improper rebuttal evidence." The objection was overruled. Government counsel also asked the witness:

"Q And did your fear have anything to do with your failure to tell the truth to the Customs Agent on the first occasion, sir?"

The question was objected to by appellant's counsel as leading and suggestive.

The objection was overruled and the witness answered: "Yes."

■ We believe that in view of Cordoba's statement on cross-examination, the Government was entitled on redirect examination to seek an explanation of the witness' statement to the Customs Agent at the time of apprehension. We concede that the questions were objectionable as to form but believe any error in the court's ruling in that respect is harmless. We might also add that counsel for appellant was allowed ample latitude in the cross-examination of Cordoba, as well as other Government witnesses.

It is last urged that the court erred in failing to grant appellant's motion for judgment of acquittal because "the evidence consisted solely of uncorroborated testimony of accomplices whose testimony had been impeached and whose [motives] were obvious."

■ It is clear from the many decisions by this court, of which are cited only the most recent, that a conviction in a federal court may be based on the uncorroborated testimony of an accomplice. White v. United States, 315 F.2d 113 (9th Cir. 1963); Bible v. United States, 314 F.2d 106 (9th Cir. 1963); Williams v. United States, 308 F.2d 664 (9th Cir. 1962); Marcella v. United States, 285 F.2d 322 (9th Cir. 1960). In Lyda v. United States, 321 F.2d 788, 794–795 (9th Cir. 1963), we said:

"We think this to be the rule even though the accomplice is in a position to gain favors from the government by his testimony, and even though there are inconsistencies in his story, so long as it is not 'incredible or unsubstantial on its face.'" (Citations omitted).

■ The extensive testimony of the two accomplices was here both credible and substantial and no material inconsistency exists therein whether viewed singly or taken together which would have constrained the granting of appellant's motion for judgment of acquittal.

Finding no error, the judgment of conviction is affirmed.