THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
WALTER PALMER, Defendant-Appellant.

First District (4th Division)   Nos. 84—718,.84—719 cons.

Opinion filed February 27, 1986.

Steven Clark and Michael J. Pelletier, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Inge Fryklund, and Daniel R. Carter, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

Defendant, Walter Palmer, was convicted of aggravated arson (Ill. Rev. Stat. 1983, ch. 38, pars. 20—1.1(a)(1), (3)) and aggravated battery (Ill. Rev. Stat. 1983, ch. 38, par. 12—4(a)), following a bench trial in the circuit court of Cook County. On appeal, defendant contends that (1) section 20—1.1(a)(1) of the Criminal Code of 1961 is unconstitutional and (2) the trial court abused its discretion by allowing his attorney to represent him while under a *per se* conflict of interest, thus depriving him of his right to effective assistance of counsel.

We reverse and remand.

Testimony at trial adduced the following facts. Defendant and his wife, Diana Palmer, lived in an apartment at 717 Seward, Evanston. They fought on the evening of August 26, 1983. Although they disagree as to the reasons for and extent of the fight, they agree that defendant struck his wife several times. Diana received a cut lip, bruises to her chest and stomach, and injury to a tooth. Police took her to the hospital, where she received three stitches to close the cut

on her lip. After leaving the hospital, Diana spent the remainder of the night with a neighbor. After the fight, defendant left the apartment and spent the night sleeping in his car parked in front of a friend's place of employment. At approximately 8:30 the following evening (August 27), Diana returned to her apartment for a few minutes and then left to return to her neighbor's apartment.

The record further shows that a fire occurred in the Palmers' apartment building on the night of August 27 at approximately 10:15. Four Evanston fire fighters were injured while extinguishing the blaze. An investigator for the Evanston fire department determined that the fire began in defendant's apartment. He further determined that the fire was neither natural nor accidental; rather, an incendiary caused it. Evanston police arrested defendant on August 28, 1983, on charges of aggravated arson and aggravated battery.

The bench trial began on February 6, 1984. The record shows that before trial began, defendant's attorney, Neil Kauffman, asked leave to withdraw as defense counsel due to a conflict of interest. He explained to the court that Diana, who retained him as defendant's attorney, was the complaining witness and a potential State's witness against defendant. Kauffman further explained that defendant believed that Kauffman would not represent defendant adequately because Kauffman had only received a portion of the fee upon which he and Diana had agreed. Defendant himself repeated Kauffman's concerns to the court and stated that he did not want Kauffman to represent him.

The trial court denied Kauffman's motion to withdraw, ruling that Kauffman would adequately represent defendant with the amount of money that Diana had paid him. The court ruled also that no conflict of interest existed in Kauffman's representation of defendant. Following trial, on February 10, 1984, the court found defendant guilty as charged and sentenced him to four concurrent 30-year prison terms for the aggravated arson under section 20—1.1(a)(3) of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 20—1.1(a)(3)) and a 30-year term for the aggravated arson under subsection (a)(1) of the statute, the sentences under subsections (a)(1) and (a)(3) to run concurrently. The trial court further sentenced defendant to a five-year term for aggravated battery, to run consecutively with his sentences for aggravated arson, for a total of 35 years. Defendant appeals.

I

Defendant first contends that we should reverse his convictions and sentences of four concurrent 30-year terms under section 20—

1.1(a)(3) of the Criminal Code of 1961 because the Illinois Supreme Court declared it unconstitutional in *People v. Wick* (1985), 107 Ill. 2d 62, 481 N.E.2d 676.

Arson is a Class 2 felony that is defined in section 20—1 of the Code as follows:

"Sec. 20—1. Arson. A person commits arson when, by means of fire or explosive, he knowingly:

(a) Damages any real property, or any personal property having a value of $150 or more, of another without his consent; or

(b) With intent to defraud an insurer, damages any property or any personal property having a value of $150 or more.

Property 'of another' means a building or other property, whether real or personal, in which a person other than the offender has an interest which the offender has no authority to defeat or impair, even though the offender may also have an interest in the building or property." Ill. Rev. Stat. 1983, ch. 38, par. 20—1.

Aggravated arson, however, is a Class X felony and is defined in section 20—1.1 of the Code, in part, as follows:

"Sec. 20—1.1. Aggravated Arson. (a) A person commits aggravated arson when by means of fire or explosive he knowingly damages, partially or totally, any building or structure, including any adjacent building or structure, and (1) he knows or reasonably should know that one or more persons are present therein or \*\*\* (3) a fireman or policeman who is present at the scene acting in the line of duty, is injured as a result of the fire or explosion." Ill. Rev. Stat. 1983, ch. 38, par. 20—1.1.

Our supreme court described the problem with subsection (a)(3) of the aggravated arson statute as follows:

"The unlawful purpose that is required for an act to constitute simple arson—that the offender knowingly damage by fire either property belonging to another without his consent, or any property with the intent to defraud an insurer—is not required for aggravated arson." *People v. Wick* (1985), 107 Ill. 2d 62, 64, 481 N.E.2d 676, 677-78.

The *Wick* court unanimously held that subsection (a)(3) of the aggravated arson statute violated due process and, therefore, was unconstitutional. The court found that "the statute as presently constituted sweeps too broadly by punishing innocent as well as culpable conduct in setting fires." (*People v. Wick* (1985), 107 Ill. 2d 62, 66, 481 N.E.2d 676, 678.) The court reasoned that an innocent person

who lawfully set fire to a building, where a fireman or policeman was injured at the scene as a result of the fire, could be convicted of a Class X felony under subsection (a)(3) of the statute. 107 Ill. 2d 62, 66, 481 N.E.2d 676.

■ Surprisingly, the State asks us not to follow *Wick*. In the State's second supplemental brief, it concluded that "[t]he *Wick* case is not well reasoned and this court should not follow its logic." This, of course, we cannot do. The State has cited no authority, nor, we surmise, could it cite any authority, for the proposition that we can ignore a recent decision of the Illinois Supreme Court. It is elementary that where our supreme court has declared Illinois law on any point, that court alone can overrule and modify its previous opinion; such a decision binds all other judicial tribunals in this State, and it is the duty of those tribunals to follow such a decision in similar cases. (*Agricultural Transportation Association v. Carpentier* (1953), 2 Ill. 2d 19, 27, 116 N.E.2d 863, 867; *Stopka v. Lesser* (1980), 82 Ill. App. 3d 323, 326, 402 N.E.2d 781, 783.) Based on *Wick*, we reverse defendant's convictions and sentences of four concurrent 30-year terms under section 20—1.1(a)(3) of the Criminal Code of 1961.

## II

Defendant next contends that we should reverse his conviction and sentence under subsection (a)(1) of the aggravated arson statute (Ill. Rev. Stat. 1983, ch. 38, par. 20—1.1(a)(1)). He argues that this subsection is unconstitutional for the same reasons that our supreme court declared subsection (a)(3) unconstitutional in *Wick*. In response, the State claims that defendant lacks standing to challenge the statute's validity.

To have standing to challenge the constitutionality of a criminal statute, a defendant must bring himself within the class directly aggrieved by the alleged unconstitutionality unless the alleged defect is so pervasive as to render the entire act invalid. (*People v. Mayberry* (1976), 63 Ill. 2d 1, 6, 345 N.E.2d 97, 100; *People v. Tellery* (1980), 87 Ill. App. 3d 298, 300, 409 N.E.2d 32, 34.) Although the defect that our supreme court found in *Wick* runs through the aggravated arson statute, only subsection (a)(1) is before us in the instant case. Defendant must, therefore, bring himself within the class directly aggrieved by the enforcement of subsection (a)(1).

■ The record shows that the trial judge made no factual finding as to defendant's culpable intent. The aggravated arson statute did not require him to do so. Defendant suffered the direct injury of incarceration as the result of the provision's enforcement. We hold that

defendant has standing to challenge the validity of subsection (a)(1) of the statute.

In response to defendant's argument that subsection (a)(1) of the aggravated arson statute is unconstitutional, the State claims that the separate element of culpable intent is unnecessary. The State contends that the very act of setting fire to or using explosives in a building, knowing that one or more persons are in the building, presumes culpability. The State further argues that the inherently hazardous nature of the act, the knowledge that persons are present, and the foreseeable consequences of the act justified the legislative assignment of culpability to the act itself.

The *Wick* court rejected this argument in reviewing subsection (a)(3). The court held that the statute swept too broadly because it punished innocent as well as culpable conduct in setting fires. (*People v. Wick* (1985), 107 Ill. 2d 62, 66, 481 N.E.2d 676, 678.) This reasoning is equally applicable to subsection (a)(1). Culpable intent is not inherent in the very act of setting a fire or using explosives in a building, knowing that persons are present therein. Yet, under subsection (a)(1), as under subsection (a)(3), an innocent person who commits this act under these circumstances could be convicted of a Class X felony.

■ The State additionally attempts to distinguish subsection (a)(1) from (a)(3) of the statute, contending that the statutory requirement of knowingly damaging a building by fire or explosives (Ill. Rev. Stat. 1983, ch. 38, par. 20—1.1(a)) provides subsection (a)(1) with the necessary element of culpable intent. The State, however, overlooks the fact that this language applied equally to subsection (a)(3), which the *Wick* court interpreted as including innocent as well as culpable conduct. Following the rationale of *People v. Wick* (1985), 107 Ill. 2d 62, 481 N.E.2d 676, we hold that section 20—1.1(a)(1) of the Criminal Code of 1961 is unconstitutional, and we reverse defendant's conviction and sentence under that provision.

### III

Defendant next contends that the trial court abused its discretion by allowing his attorney to represent him while under a *per se* conflict of interest, thus depriving him of his right to effective assistance of counsel guaranteed by the sixth amendment to the United States Constitution. We agree.

As stated above, the trial court denied attorney Kauffman's motion to withdraw as defense counsel. The trial court found that the fact that Diana Palmer was a potential witness against defendant yet retained Kauffman to represent him did not create a conflict of inter-

est. The court reasoned that no conflict existed because Kauffman was defendant's attorney alone; Diana hired Kauffman only so that defendant would be represented adequately. The court expressed its concern that every criminal defendant could postpone his trial by having his spouse hire his lawyer then, at the eve of trial, claim a violation of his sixth amendment right and request new counsel. The trial court further ruled that even if a conflict existed, defendant waived it since he knew that his wife hired his attorney yet was a potential witness against him.

■ An accused's sixth amendment right to effective assistance of counsel is fundamental and includes a correlative right to representation free from conflicts of interests. (*Wood v. Georgia* (1981), 450 U.S. 261, 271, 67 L. Ed. 2d 220, 230, 101 S. Ct. 1097, 1103; *Glasser v. United States* (1942), 315 U.S. 60, 69-79, 86 L. Ed. 680, 699, 62 S. Ct. 457, 464-65.) This right entitles a defendant to the undivided loyalty of his attorney. (*People v. Stoval* (1968), 40 Ill. 2d 109, 111, 239 N.E.2d 441, 443.) Thus, defense counsel should not represent conflicting interests or undertake the discharge of inconsistent obligations. The Illinois Supreme Court has fashioned a *per se* rule to protect these rights: where an attorney representing a defendant has an actual or possible conflict of professional interests, a reviewing court will presume prejudice and reverse the conviction. *People v. Washington* (1984), 101 Ill. 2d 104, 109-11, 461 N.E.2d 393, 395-96; *People v. Stoval* (1968), 40 Ill. 2d 109, 113, 239 N.E.2d 441.

■ Applying these principles to the case at bar, we conclude that defense counsel labored under, at the least, a possible conflict of interest in his representation of defendant. The record shows that the prosecutor requested a sidebar before Diana testified. He informed the court that during a recess Diana told him that Kauffman told her to ask the judge if she could avoid testifying by asserting the marital privilege, and that she should say that she permitted defendant to beat her. The prosecutor stated that Diana wanted to testify and did not wish to drop the charges.

In response, Kauffman reminded the court that he was in "a funny situation" and did not know what to do. He stated that when Diana hired him she told him that she did not want to testify against defendant and wanted the State to drop the charges against him. Kauffman admitted both advising her to ask the court about the availability of the marital privilege and telling her that it would be difficult for the State to prove its case if she testified that she consented to the beating.

The trial judge chastised Kauffman for advising Diana when she

was a complaining witness on the aggravated battery charge. During his rebuke, the trial judge stated, "You're in shaky enough ground in having been paid by her and representing her husband." He ended his lecture by intimating action by the Attorney Registration and Disciplinary Commission. Notwithstanding its earlier ruling, the trial court seemed to acknowledge the existence of a conflict of interest, but took no action in response to the disclosures of counsel.

■ The State first claims that no conflict of interest could exist in Kauffman's representation of defendant because it is not clear that Diana retained Kauffman. The State contends that the record does not indicate whether Diana had any independent source of funds. The State argues that since half of her family funds belong to defendant, then she did not retain Kauffman and, thus, no conflict of interest could exist in his representation of defendant.

The State seems to consider the manner and source of payment to a defendant's attorney as a threshhold issue before reaching the issue of conflict of interest. This is error. To determine whether a defense attorney has a conflict of interest, a court should not look to the technicalities of the law of offer and acceptance for guidance; rather, a court should base the determination on a realistic appraisal of defense counsel's professional relationship to someone other than the defendant under the circumstances of each case. *People v. Grigsby* (1977), 47 Ill. App. 3d 812, 817, 365 N.E.2d 481, 484; R. Ehrmann, *The Per Se Conflict of Interest Rule in Illinois*, 66 Ill. Bar J. 578, 579 (1978).

The State also claims that no conflict of interest existed in Kauffman's representation of defendant because the State, and not Diana, prosecuted the charge of aggravated battery. The State contends that no conflict of interest exists where one of the alleged sources of the conflict is not a party to the lawsuit. The State lastly claims that no conflict of interest existed because both defendant and Diana wanted the court to acquit defendant. Where the interests of a defendant and the complaining witness are identical, the State contends, no conflict of interest exists.

It would be extremely difficult for a defendant to show what subtle influences or subliminal reluctance affected the decisions of his defense counsel when advising and representing him. (*People v. Kester* (1977), 66 Ill. 2d 162, 167, 361 N.E.2d 569, 572; *People v. Karas* (1980), 81 Ill. App. 3d 990, 994, 401 N.E.2d 1026, 1029.) Because a defendant cannot identify them with certainty, we must concern ourselves with the potential conflict of interest. *People v. Karas* (1980), 81 Ill. App. 3d 990, 994, 401 N.E.2d 1026.

■ Examining the record, we are satisfied that, at the least, a

potential conflict of interest existed in the representation of defendant. Although the State began the litigation and not Diana, the positions of defendant and Diana were clearly antagonistic. Although the record shows that at times Diana indicated that she wanted defendant's charges dropped, she at other times wanted the State to prosecute defendant. Therefore, while there has been no showing that defense counsel did not represent defendant in a competent and dedicated manner with complete loyalty, we conclude that, at the least, a potential conflict was present, and we reverse defendant's conviction and sentence for aggravated battery and remand the cause for a new trial.

The State additionally contends that even if a conflict of interest existed in Kauffman's representation of defendant, defendant waived it by accepting Kauffman's services approximately three months before trial, knowing both that his wife was a potential State's witness and that she had hired Kauffman.

The United States Supreme Court stated the rule on waiver of effective assistance of counsel as follows:

"It has been pointed out that 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.' A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to Counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." (*Johnson v. Zerbst* (1938), 304 U.S. 458, 464, 82 L. Ed. 1461, 1466, 58 S. Ct. 1019, 1023, quoted in *People v. Stoval* (1968), 40 Ill. 2d 109, 114, 239 N.E.2d 441, 444.)

Further, there must be a strong showing of an intentional and knowing waiver of a conflict of interest issue. *People v. Mathes* (1979), 69 Ill. App. 3d 275, 281, 387 N.E.2d 39, 43.

■ Applying these principles to the case at bar, we conclude that the State's waiver argument is without merit. There is no indication in the record that anyone explained the conflict of interest to defendant and that he intentionally and knowingly waived the issue. The record does show, however, that defendant clearly objected to his defense counsel at trial. Because the record lacks a strong showing of an intentional and knowing waiver, we hold that defendant did not waive his right to effective assistance of counsel free of conflicts of interest.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

McMORROW and JIGANTI, JJ., concur.