THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
TERRY DUKES *et al.*, Defendants-Appellants.

First District (4th Division)   No. 85—0465

Opinion filed August 7, 1986.

Steven Clark, of State Appellate Defender's Office, of Chicago (Kay L. Pick, of Winston & Strawn, of counsel), for appellants.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Peter D. Fischer, and Jane H. Miller, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

Defendants, Terry and Sylvester Dukes, were jointly tried before a jury in the circuit court of Cook County and convicted of arson (Ill. Rev. Stat. 1981, ch. 38, par. 20—1) and aggravated arson (Ill. Rev. Stat. 1981, ch. 38, par. 20—1.1(a)(1)). The trial judge entered judgment on the convictions and imposed on each defendant concurrent sentences of three years in the penitentiary for the arson conviction and six years for the aggravated-arson conviction. Defendants appeal,

contending that (1) the State did not prove them guilty of arson and aggravated arson beyond a reasonable doubt, (2) the subsection of the aggravated-arson statute under which they were convicted is unconstitutional, (3) the improper admission of evidence probative of the aggravated-arson charge prejudiced their trial, and (4) they received ineffective assistance of counsel.

We affirm in part and reverse in part.

According to the testimony at trial, a fire occurred at 1501 South Karlov Avenue, in Chicago, on October 20, 1983, at approximately 4:30 a.m. Firemen extinguished the fire within 20 minutes of their arrival. The damage was slight and confined to the outside foyer area, the front door, and an inside wall of the building. Bruce McElrath, a Chicago police department detective, examined the building on the morning in question and concluded that the fire started at the front door of the building and that it was caused by someone throwing a molotov cocktail at the door.

The record shows that Detective McElrath found the remains of a glass bottle, a burnt wick and an unbroken bottle containing flammable liquid in the building's outside foyer. He was unable to obtain fingerprints from these objects. A police chemist tested the liquid and concluded that it was gasoline.

Jerry Brown is the owner of the subject building. The two-story structure contains two apartments with a gameroom and storeroom on the first floor, front; Brown occupies the first-floor apartment in the rear. Brown clashed with defendants on several occasions prior to the fire. On one occasion, September 27, 1983, he had ejected Sylvester from his gameroom for beating a woman who was holding an infant. Because Sylvester continued to attack the woman on the street outside of the gameroom, Brown asked him to leave the front of his building. Sylvester and another person then fought with Brown. On another occasion, October 11, 1983, Brown, standing at the front window of the gameroom and looking out at the street where his station wagon was parked, saw Terry approach the automobile and throw a stone, breaking the car window. Finally, on October 19, 1983, at approximately 9:45 p.m., hours before the fire, Brown was driving toward his garage to park his car. As he approached the garage, he saw Sylvester crouching behind the garage, lighting something. Sylvester fled when he saw Brown's automobile.

Minnie Williams lived in the upstairs apartment of the building. On October 20, 1983, at approximately 4:30 a.m., she was sitting at the window of her apartment, smoking a cigarette. Williams was awake at that hour because she prepared lunch for a friend at 5 a.m.

While sitting at the window, she heard a loud noise and saw the reflection of flames against a large tree in front of the building. She went to another window in her apartment, raised it, and looked out. She saw the flames; both defendants were standing next to a streetlight for two or three seconds before they ran away.

Williams saw both defendants everyday and was acquainted with them. She identified defendants in court as the two men she saw on the morning of the fire. Williams, however, did not see them throw anything at the building or start a fire; she did not see anything in their hands. Williams called the fire department. Thereafter, she awakened her children and led them out of the building; she also awakened Brown.

Detective McElrath interviewed Williams shortly after the firemen extinguished the fire and she had returned her children to their apartment. She told him everything she had seen and heard and whom she had seen that morning. McElrath and Officer Taylor, also of the Chicago police department, interviewed Brown.

Based on his interview with Williams, McElrath arrested defendants at approximately 5 a.m. Brown led McElrath and Taylor to defendants' residence at 1330 South Kedvale Avenue, in a second-floor apartment. After a member of defendants' family admitted McElrath to the apartment, he went to defendants' bedroom. Defendants were in bed, undressed. McElrath, however, believed them to be alert after he awakened them. McElrath sniffed their hands and clothing; he detected no odor of gasoline.

Defendants' two sisters and their mother all testified that they saw defendants sleeping in their bedroom on the morning of the fire. Sylvester testified in his own behalf, stating that he arrived home at approximately 11:30 p.m. on October 19 and went directly to bed. He further stated that his brother, Terry, was already asleep. He testified that he remained asleep until McElrath awakened him.

The jury found both defendants guilty of arson and aggravated arson and the trial judge entered judgment thereon. After a sentencing hearing, the trial judge imposed on each defendant concurrent sentences of three years for the arson conviction and six years for the aggravated-arson conviction. Defendants appeal.

I

We first address the issue of whether the State proved defendants guilty of arson beyond a reasonable doubt. The parties disagree, however, on the legal principles that we should apply to the facts of this cause.

A

■■ Direct evidence is proof of a fact without the necessity of inference or presumption or evidence of a fact perceived through a witness' senses. Circumstantial evidence, however, is the proof of certain facts and circumstances in a given case from which the trier of fact may infer other connected facts that usually and reasonably follow according to common experience. *People v. Cox* (1979), 71 Ill. App. 3d 850, 860, 389 N.E.2d 1238, 1246.

■ The opportunity for commission of an arson, the motive inducing an arson and the identity of a person accused of arson may all be established through circumstantial evidence because the crime of arson is, by its very nature, secretive and usually incapable of direct proof. (*People v. Smith* (1976), 44 Ill. App. 3d 237, 241, 357 N.E.2d 1320, 1323.) A conviction may be sustained upon circumstantial evidence as well as direct evidence, it being necessary only that the proof of circumstances must be of a conclusive nature and tendency leading, on the whole, to a satisfactory conclusion and producing a reasonable and moral certainty that the accused and no one else committed the crime. *People v. Williams* (1977), 66 Ill. 2d 478, 484-85, 363 N.E.2d 801, 804.

■■ However, when a conviction is based entirely on circumstantial evidence, the facts proved must be consistent with the defendant's guilt and inconsistent with any reasonable hypothesis of innocence. If a reasonable hypothesis of innocence arises from the evidence that is consistent with the innocence of the defendant, then a trier of fact must adopt that hypothesis. *People v. Wilson* (1948), 400 Ill. 461, 473, 81 N.E.2d 211, 220; *People v. Giangrande* (1981), 101 Ill. App. 3d 397, 400, 428 N.E.2d 503, 506.

Defendants claim that the State's evidence was entirely circumstantial and that a reasonable hypothesis of innocence arises from the evidence. The State, however, claims that the "reasonable hypothesis of innocence" standard does not apply to the instant case because its evidence was not entirely circumstantial but, rather, included trial testimony.

■■ We conclude that the evidence linking defendants to the fire was entirely circumstantial. No one saw either defendant throw a molotov cocktail or anything else at the building. The State presented no evidence that defendants held a molotov cocktail, or even touched gasoline or any other flammable liquid. McElrath arrested defendants approximately one-half hour after the fire and could not detect the odor of gasoline or anything else after examining their hands and clothing.

■ The State's contention that trial testimony is, by definition, direct evidence is error. Trial testimony is direct evidence only when it pertains to facts perceived through a witness' senses. (*People v. Cox* (1979), 71 Ill. App. 3d 850, 860, 389 N.E.2d 1238, 1246.) Further, the State's reliance on *People v. Griffiths* (1983), 112 Ill. App. 3d 322, 445 N.E.2d 521, from the Fourth Appellate District, is misplaced. The *Griffiths* court found that some of the trial testimony in that case was direct evidence and, therefore, the "reasonable hypothesis of innocence" standard was inapplicable. The trial testimony there, however, included the defendant's admissions concerning a fire. (112 Ill. App. 3d 322, 325-26, 445 N.E.2d 521.) In the instant case, the trial testimony contained no direct evidence linking defendants to the fire. We hold that the "reasonable hypothesis of innocence" standard applies to the case at bar.

B

■ After reviewing the record, we conclude that no reasonable hypothesis of innocence arises from the evidence. Our review of the trial testimony reveals an overwhelming amount of circumstantial evidence against defendants. Although Minnie Williams testified that she did not see defendants hold or throw molotov cocktails at the building, she did see them near the fire and then run away. While flight from the scene of a crime does not, in and of itself, prove guilt, if it is of such a character that it indicates an attempt to avoid capture and thus shows a consciousness of guilt on the part of the defendant, the trier of fact may consider it with all the other evidence in the case as a factor tending to show guilt. *People v. Lofton* (1965), 64 Ill. App. 2d 238, 244, 212 N.E.2d 705, 708.

Defendants argue that it "is equally as likely that the persons [Williams] saw ran to alert the fire department as ran to escape detection." This argument is inconsistent with defendants' own witnesses, who all testified that at the time of the fire defendants were in their bedroom sleeping.

We lastly note that we will not disturb a jury's determination of guilt "unless the evidence is so improbable or unsatisfactory as to raise a reasonable doubt of guilt." (*People v. Giangrande* (1981), 101 Ill. App. 3d 397, 399-400, 428 N.E.2d 503, 506, quoting *People v. Burns* (1980), 81 Ill. App. 3d 860, 863, 401 N.E.2d 1130, 1132.) We hold that the State proved defendants guilty of arson beyond a reasonable doubt.

## II

We next address the issue of whether subsection (a)(1) of the aggravated-arson statute (Ill. Rev. Stat. 1981, ch. 38, par. 20—1.1(a)(1)) is unconstitutional, requiring us to reverse defendants' convictions for aggravated arson. Once again, however, the parties disagree on the applicable law.

## A

■ Defendants claim that our recent decision in *People v. Palmer* (1986), 141 Ill. App. 3d 234, 490 N.E.2d 154, requires us to reverse their aggravated-arson convictions. Arson is a Class 2 felony that the Criminal Code of 1961 defines as follows:

"Sec. 20—1. Arson. A person commits arson when, by means of fire or explosive, he knowingly:

(a) Damages any real property, or any personal property having a value of $150 or more, of another without his consent; or

(b) With intent to defraud an insurer, damages any property or any personal property having a value of $150 or more.

Property 'of another' means a building or other property, whether real or personal, in which a person other than the offender has an interest which the offender has no authority to defeat or impair, even though the offender may also have an interest in the building or property." (Ill. Rev. Stat. 1981, ch. 38, par. 20—1.)

Aggravated arson, however, is a Class X felony that the Code defines, in part, as follows:

"Sec. 20—1.1. Aggravated Arson. (a) A person commits aggravated arson when by means of fire or explosive he knowingly damages, partially or totally, any building or structure, including any adjacent building or structure, and (1) he knows or reasonably should know that one or more persons are present therein or *** (3) a fireman or policeman who is present at the scene acting in the line of duty, is injured as a result of the fire or explosion." Ill. Rev. Stat. 1981, ch. 38, par. 20—1.1.

The Illinois Supreme Court declared subsection (a)(3) of the aggravated-arson statute unconstitutional in *People v. Wick* (1985), 107 Ill. 2d 62, 481 N.E.2d 676. The court described the problem with subsection (a)(3), as codified in the 1983 revised statutes with language identical to that in the 1981 revised statutes, as follows:

"The unlawful purpose that is required for an act to constitute simple arson—that the offender knowingly damage by fire either property belonging to another without his consent, or any prop-

erty with the intent to defraud an insurer—is not required for aggravated arson." *People v. Wick* (1985), 107 Ill. 2d 62, 64, 481 N.E.2d 676, 678.

The *Wick* court unanimously held that subsection (a)(3) violated due process, finding that the statute swept too broadly by punishing innocent as well as culpable conduct in setting fires. The court reasoned that an innocent person who lawfully set fire to a building where a fireman or policeman was injured at the scene as a result of the fire could be convicted of a Class X felony under subsection (a)(3) of the statute. 107 Ill. 2d 62, 66, 481 N.E.2d 676, 678.

Following the rationale of *Wick*, this court declared subsection (a)(1) of the aggravated-arson statute unconstitutional in *People v. Palmer* (1986), 141 Ill. App. 3d 234, 490 N.E.2d 154. We concluded that the reasoning which the *Wick* court applied to subsection (a)(3) applied equally to subsection (a)(1). 141 Ill. App. 3d 234, 238-39, 490 N.E.2d 154, 158-59.

The State, however, claims that *People v. Palmer* does not control our disposition of this issue. The State filed with the Illinois Supreme Court an appeal as a matter of right (87 Ill. 2d R. 317) and a petition for leave to appeal (103 Ill. 2d R. 315(a)). In its "Response To Defendant's Motion To File Supplemental Authority Instanter," the State argues that "[s]ince the Petition for Leave to Appeal stayed the mandate in *People v. Palmer*, defendants' reliance on that case *** is misplaced." The State concluded that *"People v. Palmer* is not currently the law in Illinois, for the mandate on this case has been stayed." This contention is, of course, error. The mandate of the appellate court is simply the vehicle by which this court transmits its judgment to the trial court and revests the trial court with jurisdiction. The judgment of the appellate court becomes effective on the date this court enters it and not on the date that the mandate issues. (*PSL Realty Co. v. Granite Investment Co.* (1981), 86 Ill. 2d 291, 304, 427 N.E.2d 563, 569.) Therefore, we hold that *People v. Palmer* became part of Illinois law on February 27, 1986, the date on which we filed our opinion. *In re Marriage of Belluomini* (1982), 104 Ill. App. 3d 301, 306, 432 N.E.2d 958, 961-62.

■ Because *People v. Palmer* applies to this cause, we must reverse defendants' convictions under subsection (a)(1) of the aggravated-arson statute and vacate their sentences. We take this opportunity, however, to note that after our supreme court decided *Wick*, the General Assembly amended the aggravated-arson statute to make it constitutionally sound (Public Act 84—1100). The statute now includes all of the elements of simple arson together with the element of culpable con-

duct, as part of the definition of the crime. (Ill. Rev. Stat. 1985, ch. 38, par. 20—1.1.) The State, however, accused defendants of violating the statute as contained in the 1981 revised statutes, long before the amendment. Thus, we still must reverse defendants' convictions for aggravated arson and vacate their sentences of that offense.

Defendants also contend that they received ineffective assistance of counsel because their attorney failed to raise in the trial court the issue of the aggravated-arson statute's constitutionality. We need not address this issue since we reverse their convictions under the statute.

### III

■ We lastly address the issue of whether the admission of evidence probative of the aggravated-arson charge prejudiced defendants' trial. Referring to our earlier discussion of the arson and aggravated-arson statutes, one sees that while the presence or absence of people in a building is an element of aggravated arson, it is irrelevant to a charge of simple arson. Defendants claim that the admission of evidence that there were people in the building, including children, prejudiced their trial, requiring a reversal.

The record shows that during the assistant State's Attorney's examination of Minnie Williams he commented, "Of course, you didn't want [your children] to die and perish." In his opening statement, he told the jury that they would hear testimony that the Williams children were screaming as they exited the building.

We agree with defendants that where evidence in a criminal trial is erroneously admitted a court of review presumes such error to affect the result unless the remaining evidence is such that the jury could have reached no other conclusion than that of defendant's guilt. *People v. Hannon* (1942), 381 Ill. 206, 212-13, 44 N.E.2d 923, 926; *People v. Sisti* (1967), 87 Ill. App. 2d 107, 112, 230 N.E.2d 500, 503.

In the instant case, we earlier held that the facts proved were consistent with defendants' guilt and that no reasonable hypothesis of innocence arose from the evidence. We, therefore, also conclude that the jury could have reached no other conclusion than that of defendants' guilt.

For the foregoing reasons, defendants' convictions for arson are affirmed; their convictions for aggravated arson are reversed and the sentences imposed on the aggravated-arson convictions are vacated.

Affirmed in part and reversed in part and vacated in part.

LINN, P.J., and McMORROW, J., concur.