THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARCOS ALCANTAR, Defendant-Appellant.

First District (1st Division)   No. 1—91—3404

Opinion filed December 28, 1992.

Rita A. Fry, Public Defender, of Chicago (Millicent Willis, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Jason H. Payne, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

Following a jury trial, defendant, Marcos Alcantar, was convicted of delivery of a controlled substance in excess of 900 grams (Ill. Rev. Stat. 1989, ch. 56½, par. 1401(a)(2)(D)), and sentenced to 49 years' imprisonment and fined $800,000. On appeal, defendant contends that: (1) he was not proved guilty beyond a reasonable doubt; and (2) his sentence of 49 years' imprisonment is excessive. For the following reasons, we affirm the judgment of the trial court.

The following facts are relevant to this appeal. At trial, Illinois State Police Officer Frank Guerra testified on behalf of the State that on August 23, 1990, at 2:30 p.m., he was introduced to Juan Reyes by a confidential police informant. Officer Guerra arranged for Reyes to page him regarding the purchase of four kilograms of cocaine.

On August 27, Officer Guerra received a page from Reyes, and called Reyes at the Alandra Club tavern. Officer Guerra agreed to buy four kilograms of cocaine from Reyes at $25,000 a kilogram, but told Reyes that he couldn't buy it that day because he needed time to get the money from his brother. Later that day, Officer Guerra called Reyes again and said that he had not been able to get the money, but would call Reyes when he did. At 3:45 p.m., Officer Guerra spoke to Reyes again and told him that he still could not get the money, and that he would call Reyes the following day.

The following day, Officer Guerra called Reyes at 4:30 p.m. and told Reyes that he still did not have the money. At that time, another man spoke to Officer Guerra over the phone. Officer Guerra assured the man that he was serious about doing business, if they would wait for the money.

On August 30, Officer Guerra received $100,000 from the Federal Drug Enforcement Agency (DEA). At approximately 11 a.m., Reyes paged Officer Guerra. Officer Guerra called Reyes, told him that he had the money and asked Reyes if he would be willing to come to the Joliet area to make the deal. At 4:15 p.m., Officer Guerra spoke to Reyes again. Reyes refused to come to Joliet, and Officer Guerra agreed to meet Reyes at the Alandra Club at 6 p.m.

At 5 p.m., Officer Guerra drove to the Alandra Club, located in the vicinity of 18th Street and Damen Avenue, Chicago, followed by approximately 16 plainclothes surveillance officers. When he arrived, Reyes was standing on the northeast corner of the intersection. Officer Guerra pulled over and Reyes got into the officer's car. Reyes told Officer Guerra that he did not yet have the cocaine. Officer Guerra told Reyes that he would take him to meet his brother, Guerra's partner and brother Fred Guerra, another undercover officer, so Reyes

could see and count the money. Officer Guerra drove to the parking lot of a Fairplay Food Store on the corner of Western Avenue and Cermak Road, arriving at 6:30 p.m. He parked next to Fred's car. Officer Guerra asked Reyes to have a seat in Fred's car and Reyes did so. Fred handed Reyes a blue gym bag containing ten bundles of $10,000. Reyes took out one bundle and thumbed through it. Then Reyes counted the bundles, and gave the bag to Fred. At that time, Officer Guerra told Reyes that they were serious about doing the deal, and asked Reyes if he could get his people to come and do the transaction in the Fairplay parking lot. Officer Guerra then took Reyes back to the Alandra Club so Reyes could make a call and told Reyes to page him when he was ready.

About 15 minutes later, Officer Guerra called Reyes at the Alandra Club, and Reyes told him that the "material" (cocaine) was on its way. At 7:30 p.m. Reyes paged Officer Guerra and said they were ready. Officer Guerra told Reyes that he did not want to go to the parking lot behind the Alandra Club where Reyes wanted him to go. Then Officer Guerra spoke to the man that he had spoken to on the telephone earlier. Officer Guerra agreed to meet them in front of the Alandra Club and do the transaction on the street.

At approximately 8 p.m. Officer Guerra returned to the Alandra Club. Defendant and Reyes were standing on the street. Officer Guerra asked them if everything was ready, and defendant told the officer that the "guy with the four kilos" had already left because he was tired of waiting. Defendant stated that he could take the officer to Blue Island and Paulina Avenue, where the guy was waiting. Officer Guerra agreed to go, but would only take one of them in his car. Defendant got into the officer's car and they drove to the intersection of Blue Island Avenue and Paulina Street. As they crossed Paulina, defendant said, "There is the guy right there. There is his car." Defendant told the officer to pull over, and Officer Guerra pulled the car over to the south side of Blue Island. Defendant got out of the car and motioned for an individual standing by a Ford Pinto to come over to the officer's car. Roberto Valencia came over and the three men conversed. Defendant told Valencia to show the officer the cocaine. Valencia then said "come with me," and Officer Guerra followed him to the Pinto. Valencia opened the passenger side door, reached down behind the passenger seat on the floor, and retrieved a black, iced-denim canvas bag. Valencia unzipped the bag and displayed four kilograms of cocaine. Officer Guerra looked at the cocaine and told them to wait while he went to get the money.

Defendant accompanied the officer back to his car. They drove back to the Fairplay Food Store parking lot where Fred Guerra was waiting with the money. Officer Guerra gave a signal and surveillance agents converged on his car and arrested defendant.

Officer Guerra's testimony was corroborated by the testimony of his brother, Officer Fred Guerra, regarding the meeting in the Fairplay Foods parking lot and defendant's arrest, and by DEA Agent Kevin Lane, who observed the events from a surveillance position and recovered the cocaine following defendant's arrest. Devendra Trivedi, an Illinois State Police forensic scientist, testified that he examined the four sealed packages of cocaine received from Officer Guerra and determined that the cocaine was 58.9% pure. Each bag separately weighed in excess of 900 grams.

The State rested and the trial court denied defendant's motion for directed verdict. Defendant called only Officer Guerra as an adverse witness in his case. The jury found defendant guilty of delivery of a controlled substance in excess of 900 grams, and judgment was entered on the verdict. Following a hearing in aggravation and mitigation, the trial judge sentenced defendant to 49 years' imprisonment and fined him $800,000. This timely appeal followed.

Defendant initially contends that he was not proved guilty beyond a reasonable doubt. Defendant argues that the State failed to prove that he intended to deliver cocaine or that he ever possessed it. Defendant concludes, therefore, that the trial court's finding of guilty on an accountability theory is not supported by the evidence.

A criminal conviction will not be set aside on review unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267.) The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*Collins*, 106 Ill. 2d at 261.) Applying this standard of review, the State responds that the evidence was sufficient to sustain defendant's conviction.

■ To sustain a conviction for unlawful delivery of a controlled substance under the theory of accountability, the State must prove that: (1) defendant solicited, aided, abetted, agreed, or attempted to aid another person in the planning or commission of the offense; (2) defendant's participation took place either before or during the commission of the offense; and (3) defendant had the concurrent, specific intent to facilitate or promote the commission of the offense. *People v. Saunders* (1990), 206 Ill. App. 3d 1008, 565 N.E.2d 183.

In reliance upon *People v. Deatherage* (1984), 122 Ill. App. 3d 620, 461 N.E.2d 631, defendant argues that his presence and knowledge of the transaction are insufficient to prove guilt. In that case, the evidence showed only that the defendant was present and may have known about the transaction, and that codefendant's reference to another "guy" was too vague to implicate defendant.

■ However, in the present case, the record establishes that defendant was more than merely present at the crime scene and that specific conduct on his part constituted a design to aid in the offense. The record shows that Officer Guerra went to the Alandra Club to meet Reyes and that he found defendant and Reyes waiting on the street together. Defendant told the officer that the guy with the cocaine (Valencia) left because he was tired of waiting. Defendant then offered to take the officer to retrieve the cocaine from Valencia, directing the officer where to go to meet Valencia. Defendant, Valencia and the officer viewed the cocaine together, then defendant accompanied the officer to get the money for the cocaine. Defendant's conduct established that he aided Reyes in the commission of the offense during its commission with the concurrent, specific intent to facilitate or promote the delivery of a controlled substance. Accordingly, the evidence was sufficient to prove defendant guilty beyond a reasonable doubt.

■ Next, defendant contends that his sentence of 49 years was excessive as compared to Reyes, who received a 15-year sentence after pleading guilty to delivery of a controlled substance in excess of 900 grams. Although an arbitrary and unreasonable disparity between the sentences of codefendants is impermissible, the mere fact that one defendant receives a substantially longer sentence than another does not, by itself, establish a violation of fundamental fairness. (*People v. Kline* (1982), 92 Ill. 2d 490, 509, 442 N.E.2d 154.) Disparity between sentences will not be disturbed where it is warranted by differences in the nature and extent of the codefendants' participation in the offenses. (*People v. Burrett* (1991), 216 Ill. App. 3d 185, 194, 576 N.E.2d 293.) However, it is the defendant's burden to produce a record from which a rational comparison of sentences can be made. (*People v. Ralon* (1991), 211 Ill. App. 3d 927, 570 N.E.2d 742.) In the present case, defendant failed to provide this court with any records relative to codefendant Reyes. It therefore cannot be determined whether or not the disparity in sentences is justified. See *Kline*, 92 Ill. 2d at 509.

The trial judge's decision regarding sentencing is given great weight and deference. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154,

368 N.E.2d 882, 884; *People v. La Pointe* (1981), 88 Ill. 2d 482, 492-93, 431 N.E.2d 344.) It is well established that sentencing is a matter of judicial discretion and that absent an abuse of that discretion, the sentence as determined by the trial court should stand. *Perruquet*, 68 Ill. 2d at 153.

■ In sentencing a defendant, the trial court may consider the gravity and circumstances of the offense, as well as defendant's mental capacity, age, demeanor and credibility. (*E.g.*, *Perruquet*, 68 Ill. 2d at 154, 368 N.E.2d at 884.) Furthermore, the trial court must balance the objectives of protecting society and rehabilitating the defendant. (See *People v. Harris* (1989), 187 Ill. App. 3d 832, 844, 543 N.E.2d 859, 866.) A reviewing court will hesitate to upset this balance, especially where the sentence falls within the statutory limitation. *People v. Lambrechts* (1977), 69 Ill. 2d 544, 559, 372 N.E.2d 641, 649.

■ Defendant's sentence of 49 years is well within the statutory guidelines for delivery of a controlled substance in excess of 900 grams. (See Ill. Rev. Stat. 1989, ch. 56½, par. 1401 (a)(2)(D) (delivery of a controlled substance in excess of 900 grams is punishable with a term of not less than 15 years and not more than 60).) The record indicates that the court considered that defendant had only six years of education, never attended high school, and that he held various janitorial jobs.

The court also considered that defendant was convicted of possession of a controlled substance in 1982 and 1989 and that he received probation for both convictions. Further, at the time of defendant's arrest, defendant had two indictments pending for alleged drug offenses committed on September 4, 1989, and September 9, 1989. The court heard testimony in aggravation from Chicago police officers Joseph Gorman and Barry Miller regarding those pending indictments, both for possession of cocaine. The court finally considered that the street value of the cocaine at issue in the present case was $800,000, and stated that "this is among the larger of the drug transactions that come before a court such as this."

Under the above circumstances, we find no error in defendant's sentence of 49 years.

For the above reasons, the judgment of the trial court is affirmed.

Affirmed.

BUCKLEY, P.J., and MANNING, J., concur.