THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MIGUEL GONZALEZ, Defendant-Appellant.

First District (1st Division)   No. 1—91—2681

Opinion filed February 16, 1993.

Rita A. Fry, Public Defender, of Chicago (Carlos J. Gonzalez, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Theodore Fotios Burtzos, Eileen O'Neill, Susan Schierl, and Linda Jakubs, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

Following a bench trial, defendant, Miguel Gonzalez, was found guilty of aggravated arson and sentenced to 10 years' imprisonment. On appeal, defendant contends that: (1) he was not proved guilty of aggravated arson beyond a reasonable doubt; (2) the State failed to prove venue beyond a reasonable doubt; and (3) the trial court considered improper factors in sentencing him to an excessive term of 10 years' imprisonment. For the following reasons, we affirm, reducing the sentence imposed by the trial court.

According to the testimony at trial, on March 28, 1989, at 2:50 a.m., police responded to a disturbance in the vicinity of 1157 West 17th Street, found defendant in the backyard behind the apartment building located at that address, and arrested him for arson. Chicago police department arson investigator Sam Grano examined the building on the morning in question, concluding that the fire started in the first-floor rear apartment, and that it was caused by available materials ignited with an open flame. Detective Grano took photographs of the interior and exterior of the building, which were admitted into ev-

idence at trial. The photographs show that the fire damaged three square inches of floor, with additional damage to clothes and carpet in the area. Detective Grano could not discern whether the fire was caused by a discarded match or intentionally started.

Adella Reyes testified that she and her five children lived in the first-floor front apartment of the three-story, six-unit building located at 1157 West 17th Street. At that time, the three rear apartments in the building were unoccupied. Reyes met defendant approximately 15 days prior to the date of the fire. Defendant lived on the third floor of the building, and on three occasions stayed overnight in the kitchen of Reyes' apartment. Defendant gave Reyes several little pots, for which Reyes owed defendant $50.

On March 28 at approximately 2:30 a.m. Reyes was home with her children. Defendant came to Reyes' door and asked her for his flashlight and for the money she owed him. Reyes did not open the door. Reyes told defendant that she looked for his flashlight but could not find it and that she did not have any money. Reyes thought defendant had been drinking because he was talking loudly.

About a half an hour later, a girl came to Reyes' door and told her that there was a fire outside. Reyes went outside to locate a police officer, and Reyes' son, Jose, put out the fire, which was located in the vacant apartment directly behind Reyes' apartment.

Gilberto Juarez testified on behalf of the State that on March 28, 1989, at approximately 2:30 a.m., he was walking past 1157 West 17th Street when he saw a man crouched down by a wood pile behind the building, attempting to light the wood pile on fire. Juarez asked the man what he was doing, and the man looked up at Juarez and said nothing. At that time, Juarez noticed smoke and a few flames emanating from the rear of the building. Juarez asked the man if he had set the building on fire and the man did not respond. Juarez then told the man to get up, but the man was drunk and had difficulty doing so. Juarez told the man not to move.

Juarez then saw a girl standing at the side of the building. Juarez told her to go into the building, wake the occupants and tell them to get out of the building. The man then tried to run away. Juarez put his walking cane under his trench coat and lifted it up to block the man's way and hold him there until the police arrived. The man told Juarez that he started the fire in the building because "they" owed him money. Juarez stated that the man was referring to a woman who lived in the building, but Juarez did not know her name.

The police arrived about 10 minutes later and Juarez told them what had happened and what the man had said. The police arrested the man. Juarez did not identify defendant in court.

Next, Chicago police officer Andre Hassan testified that on the morning in question, at approximately 2:50 a.m., he and his partner, Officer Jim Cummings, were on duty in the 12th district. They were in the vicinity of 1157 West 17th Street when they heard noises and yelling coming from the alley. They went around to the back to investigate and found Juarez trying to detain defendant in the backyard. Defendant was about 10 feet away from the officers, standing by a wood pile.

Juarez told the officers that defendant had said that he tried to burn down the building because the occupants there owed him $50. Officer Hassan searched defendant and recovered three books of matches. Officer Hassan advised defendant of his rights in Spanish, reading from a preprinted card. Defendant responded that he understood his rights. Defendant then told the officers that he had tried to burn down the building because the occupants there owed him $50.

On cross-examination Officer Hassan stated that he believed that defendant had been drinking because of the heavy smell of alcohol on his breath. The parties stipulated to the testimony of Isadore Delgado, the owner of the building, that prior to the fire there was no damage to the floor or to items in the apartment and that Delgado did not give defendant permission to start the fire.

The trial court found defendant guilty of aggravated arson. Following a hearing in aggravation and mitigation, the trial court sentenced defendant to 10 years' imprisonment. This timely appeal followed.

Initially, defendant contends that he was not proved guilty of aggravated arson beyond a reasonable doubt. Defendant argues that there was no direct evidence against him and that the circumstantial evidence against him was insufficient to establish that he set any fire.

Where a defendant contests the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Burrett* (1991), 216 Ill. App. 3d 185, 576 N.E.2d 293, citing *People v. Young* (1989), 128 Ill. 2d 1, 49, 538 N.E.2d 453.) The trier of fact has the exclusive province to assess the credibility of the witnesses, the weight to be given their testimony and the inferences to be drawn from the evidence. (*Young*, 128 Ill. 2d at 51.) Elements of aggravated arson may be shown by circumstantial evidence, and is-

sues such as motive, opportunity or knowledge can be inferred from the surrounding facts of each case. *Burrett*, 216 Ill. App. 3d at 190; *People v. Dukes* (1986), 146 Ill. App. 3d 790, 497 N.E.2d 351.

Section 20—1 of the arson statute provides:

"A person commits arson when, by means of fire or explosive, he knowingly:

(a) Damages any real property, or any personal property having a value of $150 or more, of another without consent." (Ill. Rev. Stat. 1989, ch. 38, par. 20—1.)

The aggravated arson statute provides in relevant part that a "person commits aggravated arson when in the course of committing arson he knowingly damages, partially or totally, any building or structure, including any adjacent building or structure, and (1) he knows or reasonably should know that one or more persons are present therein." Ill. Rev. Stat. 1989, ch. 38, par. 20—1.1.

■ The record shows that defendant was found at the scene of the fire, attempting to start a fire in a wood pile behind the very building wherein a fire was burning. Adella Reyes testified that she knew defendant and that he had come to her door asking for money half an hour before the fire was started, providing proof of defendant's motive for setting the fire. Gilberto Juarez testified that defendant told him he started the fire in the building because someone inside owed him money. Upon defendant's arrest, defendant repeated this statement, and police recovered three books of matches from defendant's pockets. Detective Grano testified that the fire was started by igniting materials with open flame. Testimony further revealed that defendant was not given permission to start the fire. While no witness testified that he or she saw defendant start the fire, defendant's guilt can be inferred from the circumstantial evidence. See *Burrett*, 216 Ill. App. 3d at 191; *Dukes*, 146 Ill. App. 3d at 794 ("the crime of arson is, by its very nature, secretive and usually incapable of direct proof").

Defendant's reliance upon *In re D.A.* (1983), 114 Ill. App. 3d 522, 448 N.E.2d 1036, and *People v. Gugliotta* (1980), 81 Ill. App. 3d 362, 401 N.E.2d 262, is unpersuasive. In *In re D.A.* the State failed to introduce any evidence which tended to prove that someone was criminally responsible for the fire. The court found that the independent evidence tended to establish only that a building burned. (*In re D.A.*, 114 Ill. App. 3d at 525.) Similarly, in *Gugliotta*, the court held that the State failed to prove defendant's connection to fires in an elevator and to draperies in a building wherein defendant had attended a party. (*Gugliotta*, 81 Ill. App. 3d at 366.) In the present case, the rec-

ord shows that the State proved defendant guilty of aggravated arson beyond a reasonable doubt.

■ Defendant next asserts that the State failed to prove venue beyond a reasonable doubt. Defendant argues that the record contains no testimony that the arson occurred in "Cook County, Illinois."

The charge that a crime was committed in a particular county is a material allegation which must be proved beyond a reasonable doubt, along with the other elements of an offense, in order to sustain a conviction. (*People v. Hagan* (1991), 145 Ill. 2d 287, 583 N.E.2d 494, 499.) However, like any other fact in a criminal case, the venue of an offense may be proved by circumstantial as well as by direct evidence. (*Hagan,* 145 Ill. 2d at 300; *People v. Carroll* (1992), 260 Ill. App. 3d 319.) Certain factors in evidence, such as the testimony of Chicago police personnel, and the descriptions of street locations and street names, are sufficient to establish venue by circumstantial evidence. *People v. Pride* (1959), 16 Ill. 2d 82, 156 N.E.2d 551; *People v. Gutirrez* (1990), 205 Ill. App. 3d 231, 251-52, 564 N.E.2d 850, 863; *People v. Kucala* (1972), 7 Ill. App. 3d 1029, 1034, 288 N.E.2d 622, 625; *People v. Washington* (1966), 81 Ill. App. 2d 90, 102, 225 N.E.2d 472, 479, *aff'd* (1968), 41 Ill. 2d 16, 241 N.E.2d 425.

The record shows that the evidence was sufficient to establish venue by circumstantial evidence. Each of the State's witnesses testified to the precise location of the arson by reference to the exact address and street name. Adella Reyes testified that she lived at 1157 West 17th Street, and gave a physical description of the building wherein the fire was started. Gilberto Juarez testified that on the morning in question, he was walking by 1157 West 17th Street on his way home when he encountered defendant attempting to start a fire. In addition, two Chicago police department personnel testified at trial. Detective Grano testified that he investigated an arson at 1157 West 17th Street and took photographs of the exterior and interior at that location. Officer Hassan testified that on the morning in question, he was on duty in the Chicago police department's 12th district, when he investigated a disturbance at 1157 West 17th Street.

Defendant's reliance upon *People v. White* (1975), 26 Ill. App. 3d 659, 325 N.E.2d 313, is unavailing as the facts are distinguishable. In *White,* there was no evidence presented at trial as to any specific street address where the crime allegedly occurred. Evidence regarding venue was limited to the testimony of one Area 4 Chicago police officer who stated that she viewed the defendant's bruises two days after the incident at the University of Illinois Hospital. This court held that the officer's testimony had no relevance to the location to

the alleged crime and was therefore insufficient evidence from which the court could infer that the crime occurred within the venue of Chicago, Cook County, Illinois. *White*, 26 Ill. App. 3d at 661, 325 N.E.2d at 315.

■ Next, defendant contends that the trial court improperly considered, as an aggravating factor in sentencing, that defendant's conduct threatened harm. Defendant argues, therefore, that his sentence of 10 years was excessive.

In sentencing defendant, the trial court stated:

"Mr. Gonzalez, this is a very serious matter. The charge of aggravated arson is, I believe, one of the most serious types of crimes, because the person who begins this kind of violence loses control over it and endangers themselves and the other people beyond the person that the violence was aimed towards.

There were a number of people in that building, who had nothing to do with your dispute with the lady you felt owed you money, and when you acted in the way you did, you threatened all of their lives as well."

Section 5—5—3.2(a)(1) of the Unified Code of Corrections provides that a trial court may consider that a defendant's conduct caused or threatened serious harm as a reason to impose a more severe sentence. (Ill. Rev. Stat. 1989, ch. 38 par. 1005—5—3.2(a)(1).) Defendant, citing *People v. Conover* (1981), 84 Ill. 2d 400, 419 N.E.2d 906, argues that the trial court should not have considered that his conduct threatened harm as a factor in aggravation because it is a factor implicit in the offense of aggravated arson. In *Conover*, the supreme court vacated defendant's sentences for burglary stating that a factor implicit in a charged offense should not be considered as an aggravating factor at sentencing. *Conover*, 84 Ill. 2d at 404.

Defendant distinguishes the present case from *People v. Hunter* (1981), 101 Ill. App. 3d 692, 428 N.E.2d 666. There, defendant was convicted of aggravated arson and sentenced to 10 years' imprisonment for setting fire to his own duplex home in order to obtain insurance proceeds. The Paul family, who also lived in the duplex, escaped the fire with their two-year-old daughter. Firefighters fought the blaze for an hour, but were unable to save the house. In sentencing, the trial court considered various factors in aggravation, including that:

"the defendant's conduct threatened serious harm to the Pauls including one child and but for some alertness on the part of public officials it could have very easily resulted in a death. When you deal with arson, it has to be punished severely so as

to deter others from committing the same crime especially when this one was on the evidence for the purpose of getting rid of his house to the insurance company because he couldn't sell it." (*Hunter*, 101 Ill. App. 3d at 693.)

On appeal, the court held that it was improper at sentencing for the trial judge to consider that persons were exposed to serious harm because that fact is implicit in the charge of aggravated arson. (*Hunter*, 101 Ill. App. 3d at 694, 428 N.E.2d at 668.) Nevertheless, the court affirmed Hunter's conviction, finding that the trial judge based his sentence not on this improper factor but on other factors, including the seriousness of arson generally, the danger to the victims specifically, and defendant's "obvious venal motivation" in destroying his own home to gain insurance proceeds. The court found that the trial court properly considered " 'the nature and circumstances of the offense, including the nature and extent of each element of the offense as committed by the defendant.' " *Hunter*, 101 Ill. App. 3d at 694, quoting *People v. Tolliver* (1981), 98 Ill. App. 3d 116, 117-18, 424 N.E.2d 44.

In the present case, the trial judge did not determine defendant's sentence based on nature and extent of the offense committed by the defendant, but rather relied on the fact that defendant's actions threatened the lives of others. Unlike *Hunter*, the trial court here improperly relied on this aggravating factor in sentencing defendant.

A sentence will not be altered on review absent an abuse of discretion by the sentencing judge. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 492-93, 431 N.E.2d 344; *People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882.) A proper objective in determining the extent and nature of a criminal penalty is the restoration of the offender to useful citizenship (Ill. Const. 1970, art. I, §11) and in sentencing a defendant, the trial court must balance the objectives of protecting society with rehabilitating the defendant. (*People v. Center* (1990), 198 Ill. App. 3d 1025, 556 N.E.2d 724.) This balancing process requires careful consideration of all factors in aggravation and mitigation, including *inter alia* the defendant's age, demeanor, credibility, criminal history and education, as well as the nature and circumstances of the crime and of defendant's conduct in the commission of it. *E.g., People v. O'Neal* (1988), 125 Ill. 2d 291, 531 N.E.2d 366; *Center*, 198 Ill. App. 3d at 1033.

Aggravated arson is a Class X felony punishable with a term of not less than 6 and not more than 30 years. (See Ill. Rev. Stat. 1989, ch. 38, pars. 20—1.1(b), 1005—5—3(c)(2)(C), 1005—8—1(a)(3).) In the present case, defendant was sentenced to 10 years' imprisonment. At

the sentencing hearing, the trial judge properly considered that defendant did not speak English, had a limited education, was employed as a cook at the time of his arrest, and had no prior criminal history in Chicago. In addition, the sentencing judge considered that defendant was intoxicated on the morning of the fire, did not remember what had occurred, and felt remorse for his actions. Nevertheless, we conclude that the trial erred in considering an aggravating factor in sentencing the defendant to 10 years' imprisonment. Therefore, under the authority of Supreme Court Rule 615(b)(4) (134 Ill. 2d R. 615(b)(4)), we reduce defendant's sentence to a term of six years' imprisonment.

For the reasons set forth above, we affirm the judgment of the trial court and the sentence as reduced.

Affirmed as modified.

BUCKLEY and O'CONNOR, JJ., concur.