UNITED STATES of America ex rel.
Marcos ALCANTAR, Petitioner,

v.

Richard GRAMLEY, Warden,
et al., Respondents.

No. 94 C 7079.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 13, 1994.

Marcos Alcantar, pro se.

### MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Marcos Alcantar ("Alcantar") has tendered a 28 U.S.C. § 2254 ("Section 2254") Petition for Writ of Habeas Corpus ("Petition"), challenging both his conviction in the Circuit Court of Cook County and his 49–year sentence on the charge of delivery of a controlled substance in excess of 900 grams. Although Alcantar did not accompany the Petition with either the $5 filing fee or an appropriate in forma pauperis request, this opinion will cut through the delay that either of those steps would entail—because Alcantar's Petition must fail as a matter of law in all events.

It appears from the Petition that Alcantar's pursuit of his state court remedies—both on appeal (in that respect the Illinois Appellate Court's opinion is reported at 240 Ill.App.3d 428, 181 Ill.Dec. 249, 608 N.E.2d 322 (1st Dist.1992), following which the Illinois Supreme Court denied leave to appeal) and via post-conviction proceedings—has exhausted those remedies, as is required by Section 2254(b). This opinion therefore

turns to consideration of his substantive claims, mindful of the presumptive validity that is required to be accorded to the factual determinations of the Illinois Appellate Court in affirming Alcantar's conviction (see Section 2254(d) and *Sumner v. Mata*, 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981)).

■ Ground 1 of the Petition contends that Alcantar "was not proved guilty beyond a reasonable doubt." In that respect he faces the almost insurmountable hurdle that has been raised by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) and that since then has been regularly repeated by other courts, including our own Court of Appeals:

> Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

There is not the slightest question that what the Illinois Appellate Court set out at 240 Ill.App.3d at 430–32, 181 Ill.Dec. at 251–52, 608 N.E.2d at 324–25 amply supports every element required for Alcantar's conviction for delivery of the four kilograms of cocaine referred to there.

■ Next Ground 2 of the Petition challenges the trial court's 49–year sentence as "excessive," principally pointing to the disparity between the length of that sentence and the 15–year custodial term that was imposed on Alcantar's codefendant (who pleaded guilty, while Alcantar chose to stand trial). But it must be remembered that Section 2254 addresses only *constitutional* violations, and nothing in what Alcantar advances in the Petition suggests anything even approaching that type of defect. In analytical terms the only possible candidates for the unconstitutionality of the 49–year term imposed upon Alcantar are the Eighth Amendment's [1] prohibition against cruel and unusual punishment and the Fourteenth Amendment's Equal Protection Clause. In the first respect Eighth Amendment jurisprudence plainly does not invalidate a prison term of that length for a substantial drug offense, and as for the second possibility Alcantar certainly has not stated an effective claim of a Fourteenth-Amendment-violative denial of equal protection of the laws. On that latter score the studied comparison of culpability and the sentence evaluation that were set forth in the Illinois Appellate opinion (240 Ill.App.3d at 433–34, 181 Ill.Dec. at 253, 608 N.E.2d at 326) negate any such claim even under the apparently less demanding standard imposed by state law.[2]

■ Alcantar's third and fourth grounds assert that he was deprived of effective representation by counsel both at the trial and the appellate levels (in the latter respect, the inadequacy that he urges is the same as what he ascribes to trial counsel, compounded by an asserted conflict of interest that allegedly inhibited the appellate lawyers' attack on the

1. As always, this opinion adheres to the conventional and convenient (though technically imprecise) practice of referring to the underlying Bill of Rights provision (which of course imposes limitations only on the federal government) rather than to the Fourteenth Amendment (which applies to state actors and has been construed to embody such Bill of Rights guaranties).

2. Indeed, that opinion also points out (*id.* at 433, 181 Ill.Dec. at 253, 608 N.E.2d at 326 (citations omitted, emphasis added)):

> Although an arbitrary and unreasonable disparity between the sentences of co-defendants is impermissible, the mere fact that one defendant receives a substantially longer sentence than another does not, by itself, establish a violation of fundamental fairness. Disparity

between sentences will not be disturbed where it is warranted by differences in the nature and extent of the co-defendants' participation in the offenses. *However, it is the defendant's burden to produce a record from which a rational comparison of sentences can be made. In the present case, defendant failed to provide this court with any records relative to co-defendant, Reyes. It therefore cannot be determined whether or not the disparity in sentences is justified.* That procedural default, which provides an independent and adequate state ground supporting Alcantar's sentence (*Coleman v. Thompson*, 501 U.S. 722, 729–32, 111 S.Ct. 2546, 2553–55, 115 L.Ed.2d 640 (1991)), triggers the operation of the cause-and-prejudice doctrine of federal habeas law (*id.* at 750, 111 S.Ct. at 2564–65), the demands of which Alcantar has surely failed to meet.

trial counsel's ineffectiveness[3]). In part Alcantar's criticism is that the trial lawyer's opening statement presented a theory of defense that was not then buttressed by the presentation of evidence, but that facet of his claim is obviously dependent on his descriptions of the trial lawyer's purported substantive delinquency (the following quotations are taken verbatim from Petition ¶¶ 11(C) and (D)):

Trial counsel's failure to investigate and interview defense witnessess denied the petitioner the opportunity to establish his peripheral involvement if any, with the crimes charged.

\*     \*     \*     \*     \*     \*

Petitioner notified and informed his appellate attorney's that no defense witnessess were called by the trial attorney that would have supported his theory of defense and these same witnessess could have backed-up his appellate claims that he was not proved guilty beyond a reasonable doubt.

Alcantar faces two fundamental problems in advancing those arguments. For one thing, he has not identified any witness or witnesses who assertedly would have been able to present the kind of evidence to which he refers, nor has he said anything about the nature of that testimony (essential components of the showing of "prejudice" required to support an ineffective-assistance claim, as taught by the seminal *Strickland v. Washington* decision discussed a bit later). Even more fundamentally, that omission of any of the required particulars appears entirely understandable, because the evidence as to Alcantar's participation in the crimes was both direct and incontrovertible, reflecting anything but a "peripheral involvement" on his part. Here are the Illinois Appellate Court findings as to Alcantar, which follow the court's description of the prior negotiations between Illinois State Police Officer Frank Guerra ("Guerra"), playing the undercover role of a purchaser of cocaine, and Alcantar's co-defendant Juan Reyes ("Reyes")[4] (240 Ill. App.3d at 431–32, 181 Ill.Dec. at 251–52, 608 N.E.2d at 324–25):

About fifteen minutes later, Officer Guerra called Reyes at the Alandra Club, and Reyes told him that the "material" (cocaine) was on its way. At 7:30 p.m. Reyes paged Officer Guerra and said they were ready. Officer Guerra told Reyes that he did not want to go to the parking lot behind the Alandra Club where Reyes wanted him to go. Then Officer Guerra spoke to the man that he had spoken to on the telephone earlier. Officer Guerra agreed to meet them in front of the Alandra Club and do the transaction on the street.

At approximately 8 p.m. Officer Guerra returned to the Alandra Club. Defendant and Reyes were standing on the street. Officer Guerra asked them if everything was ready, and defendant told the officer that the "guy with the four kilos" had already left because he was tired of waiting. Defendant stated that he could take the officer to Blue Island and Paulina Avenue, where the guy was waiting. Officer Guerra agreed to go, but would only take one of them in his car. Defendant got into the officer's car and they drove to the intersection of Blue Island Avenue and Paulina Street. As they crossed Paulina, defendant said, "There is the guy right there. There is his car." Defendant told the officer to pull over, and Officer Guerra pulled the car over to the south side of Blue Island. Defendant got out of the car and motioned for an individual standing by a Ford Pinto to come over to the officer's car. Roberto Valencia came over and the three men conversed. Defendant told Valencia to show the officer the cocaine. Va-

---

**3.** According to Petition ¶¶ 13 and 15, that conflict was created by the fact that public defenders represented Alcantar at all stages. In light of the conclusion reached here, it is unnecessary to address that contention.

**4.** Before the next-quoted findings Guerra had never met Alcantar—Guerra had only spoken to another man on the telephone during one of his telephone conversations with Reyes. As the ensuing events reflected, that other man was unquestionably Alcantar. It is true that such identification depends on an inference (an overwhelming one, to be sure)—but even if that facet of the matter were to be ignored Alcantar was still linked with the drug sale by the proverbial hoops of steel.

lencia then said, "come with me," and Officer Guerra followed him to the Pinto. Valencia opened the passenger side door, reached down behind the passenger seat on the floor, and retrieved a black iced-denim canvas bag. Valencia unzipped the bag and displayed four kilograms of cocaine. Officer Guerra looked at the cocaine and told them to wait while he went to get the money.

Defendant accompanied the officer back to his car. They drove back to the Fairplay Food Store parking lot where Fred Guerra was waiting with the money. Officer Guerra gave a signal and surveillance agents converged on his car and arrested defendant.

That account was fully corroborated by two other eyewitnesses: Officer Fred Guerra, who was Officer Frank Guerra's brother in real life and who also played the undercover role of Guerra's brother and co-purchaser in the dealings with Reyes and Alcantar, and a DEA agent who observed the events from a surveillance position and who recovered the cocaine after Alcantar's arrest.

It will be recalled that the test for constitutionally inadequate representation by counsel, articulated by *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and the many cases following it, has two components (*id.* at 687, 104 S.Ct. at 2064):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

And *Strickland, id.* at 697, 104 S.Ct. at 2069 further teaches:

Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

In this instance that latter course plainly permits the swift disposition of Alcantar's ineffective-assistance claims. Nothing that has been tendered by Alcantar even hints at how any witness or combination of witnesses could undo the fatally damning effect of the three eyewitnesses' descriptions of Alcantar's intimate and direct participation in the four-kilogram cocaine delivery. Hence both his third and fourth grounds are just as unavailing as the first two.

In summary, this Court has engaged in the prompt examination of the Petition that is called for by Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, and in the words of that rule "it plainly appears from the face of the Petition ... that the petitioner is not entitled to relief in the district court." Accordingly the Petition is dismissed summarily, and notification of this disposition is contemporaneously being transmitted to petitioner Alcantar.